# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JENNI CHAMBERS,** *et al.* <br><br>  Plaintiffs, <br><br> v. <br><br> **AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES INTERNATIONAL UNION, AFL-CIO,** *et al.* <br><br>  Defendants. | Case No. 3:18-cv-1685-SI <br><br> **OPINION AND ORDER** |

Milton L. Chappell, NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC., 8001 Braddock Road, Suite 600, Springfield, VA 22151; James G. Abernathy and Rebekah C. Millard, FREEDOM FOUNDATION, PO Box 552, Olympia, WA 98507. Of Attorneys for Plaintiffs.

Scott A. Kronland, P. Casey Pitts, Matthew J. Murray, and Amanda C. Lynch, ALTSHULER BERZON LLP, 177 Post Street, Suite 300, San Francisco, CA 94108; Margaret S. Olney, BENNETT HARTMAN MORRIS & KAPLAN LLP, 210 SW Morrison Street, Suite 500, Portland, OR 97204; James S. Coon, THOMAS, COON, NEWTON & FROST, 820 SW Second Avenue, Suite 200, Portland, OR 97204; Jason M. Weyland, TEDESCO LAW GROUP, 12780 SE Stark Street, Portland, OR 97233; Jeffrey W. Burritt, NATIONAL EDUCATION ASSOCIATION, 1201 Sixteenth Street NW, Eighth Floor, Washington, DC 20036. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs are public employees in Oregon.[1] Defendants are unions or their affiliates (collectively, "Defendants" or the "Unions") that exclusively represent Plaintiffs in the public workplace.[2] The Unions negotiated collective bargaining agreements ("CBAs") with Plaintiffs' public employers. These CBAs established the terms and conditions of employment for the relevant bargaining units. Although Plaintiffs were not members of the Unions, Oregon law had previously required Plaintiffs to pay compulsory union fees, often by automatic deduction from Plaintiffs' wages, to the Unions as a condition of Plaintiffs' public employment. In addition, certain provisions in Plaintiffs' respective CBAs reinforced this obligation. Plaintiffs did not consent to paying these fees to the Unions.

Under Oregon's Public Employee Collective Bargaining Act ("PECBA"), Or. Rev. Stat. ("ORS") §§ 243.650-243.782 (2017), bargaining units of public employees may choose, by majority vote, to form a union for collective bargaining with public employers about their terms and conditions of employment. PECBA also had previously authorized public employers and employee unions to enter into agreements that required represented employees who were not

---

[1] Plaintiffs are Jenni Chambers, Terry Godwin, Steven Masuo, Bryan Quinlan, Marian Shadrin, Misty Staebler, Betty Sumega, Gloria Carlson, Jacyn Gallagher, Lindsey Hart, Craig Leech, and Matthew Puntney.

[2] Defendants are American Federation of State, County, and Municipal Employees International Union, AFL-CIO ("AFSCME"), its Oregon state affiliate Oregon AFSCME Council 75, local affiliates Multnomah County Employees Union AFCSME Local 88, AFSCME Local 3336, and City of Cornelius Employees Union AFSCME Local 3786-2 (erroneously sued as City of Cornelius Employees Union AFSCME Local 189); National Education Association ("NEA"), its Oregon state affiliate Oregon Education Association ("OEA"), and local affiliates Southern Oregon Bargaining Council ("SOBC") and Three Rivers Education Association ("TREA"); Service Employees International Union ("SEIU"), its Oregon state affiliate SEIU Local 503 Oregon Public Employees Union ("OPEU"), and local affiliates Marion County Employees Association OPEU Local 294 and OPEU Linn County Local 390; and the Association of Engineering Employees of Oregon ("AEE").

union members to pay "fair-share fees"[3] to cover their proportionate share of the costs of collective-bargaining representation. *See* ORS § 243.650(10) and (18) (2017); ORS § 243.666(1) (2017); ORS § 243.672(1)(c) (2017); and ORS § 292.055(5) (2017).[4] In *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), the United States Supreme Court explicitly upheld this practice of collecting compulsory fair-share fees from public employees under state law. It was also standard practice in public-sector bargaining agreements throughout the United States for more than 40 years. That all changed in June 2018, when the Supreme Court overturned *Abood* in *Janus v. American Federation of State, County & Municipal Employees, Council 31*, ––– U.S. –––, 138 S. Ct. 2448 (2018). In *Janus*, the Supreme Court held that collecting fair-share fees from nonconsenting public sector employees violates the First Amendment rights of those nonconsenting employees, no matter how the fees were spent.

In September 2018, Plaintiff brought this putative class action against Defendants. Plaintiffs allege that the forced fee deductions, or fair-share fees, violate their rights under the First and Fourteenth Amendments and are actionable under 42 U.S.C. § 1983. Plaintiffs seek money damages and declaratory relief. Plaintiffs also allege state a tort claim of conversion of property for which they seek replevin or restitution. Defendants have moved to dismiss or for summary judgment, and the Court will treat Defendants' motion as a motion for summary judgment. Finally, the Court notes that a recent Ninth Circuit decision, *Danielson v. Inslee*, 945 F.3d 1096 (2019), involves issues that are nearly identical to those here and is binding precedent

---

[3] Fair-share fees are sometimes called "agency fees," "service fees," "representation fees," or "payments-in-lieu -of-dues." Plaintiffs call them "forced fee deductions." In this Opinion and Order, the Court will use the terms "forced fee deductions," "fair-share fees," and "payments-in-lieu-of-dues" interchangeably.

[4] *See* n.7, *infra*.

on this Court.[5] For the reasons below, including the Ninth Circuit's decision in *Danielson*, Defendants' motion for summary judgment is granted.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## DISCUSSION

Defendants primarily make three arguments. First, Defendants assert that Plaintiffs' claims for monetary relief should be dismissed because before *Janus* Defendants collected fair-share fees in good-faith reliance on state law and controlling Supreme Court precedent. Second,

---

[5] The Court also notes that the Ninth Circuit's decision in *Danielson* accords with the Seventh Circuit's decisions in *Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31* ("*Janus II*"), 942 F.3d 352 (7th Cir. 2019), and *Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368 (7th Cir. 2019), and the Sixth Circuit's decision in *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386 (6th Cir. 2020). Indeed, the Court is aware of no contrary appellate caselaw.

Defendants maintain that Plaintiffs cannot prevail on their state claim for conversion and are not entitled to either replevin or restitution. Finally, Defendants contend that Plaintiffs' request for declaratory relief is moot. In response, Plaintiffs offer essentially four points. First, Plaintiffs assert that "good faith" is not a recognized defense for a private party against a claim under § 1983 for violating First Amendment rights. Second, Plaintiffs contend that even if good faith were a defense, Defendants have not established their good faith. Third, Plaintiffs argue that they have presented evidence of conversion under Oregon law as well as their entitlement to the equitable remedy of restitution. Fourth, Plaintiffs reject Defendants' assertion of mootness. The Court will address each point in turn.[6]

## A. Whether Good Faith Is Available as a Defense for a Private Party in a § 1983 Claim

In *Danielson*, the Ninth Circuit addressed a case involving almost identical facts, claims, and defenses. The Ninth Circuit, agreeing with the Seventh Circuit, stated:

> We hold that the district court properly dismissed Plaintiffs' claim for monetary relief against the Union. In so ruling, we join the Seventh Circuit, the only other circuit to have addressed the question before us. *See Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31*, 942 F.3d 352 (7th Cir. 2019) ("*Janus II*"); *Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368 (7th Cir. 2019). We agree with our sister circuit that a union defendant can invoke an affirmative defense of good faith to retrospective monetary liability under section 1983 for the agency fees it collected pre-*Janus*, where its conduct was directly authorized under both state law and decades of Supreme Court jurisprudence. The Union was not required to forecast changing winds at the Supreme Court and anticipatorily presume the overturning of *Abood*. Instead, we permit private parties to rely on judicial pronouncements of what the law is, without exposing themselves to potential liability for doing so.

---

[6] In *Danielson*, the Ninth Circuit assumed without deciding the retroactivity of the rule established in *Janus*. *Danielson*, 945 F.3d at 1099. This Court does likewise.

*Danielson*, 945 F.3d at 1098-99. In that case, the Ninth Circuit thoroughly explained its rationale. *See Danielson*, 945 F.3d at 1099-102. There is no need to repeat it here. Under binding Ninth Circuit precedent, Defendants here may assert good faith as a complete defense to Plaintiffs' claim under § 1983.

**B. Whether Defendants Have Established Good Faith as a Matter of Law**

Plaintiffs argue that, even if good faith is available as a defense, Defendants have not established their good faith as a matter of law. Plaintiffs make several arguments. First, Plaintiffs state that Defendants subjectively "knew" that the Supreme Court was likely to reverse *Abood* and hold that mandatory fair-share fees are unconstitutional. Second, Plaintiffs maintain that Defendants also expected and planned for the outcome in *Janus* and even used indemnity clauses, further reflecting their legal uncertainty in the viability of *Abood*. Third, Plaintiffs argue Defendants were not acting under "close government supervision."

Plaintiffs maintain that their evidence shows that Defendants subjectively anticipated the Supreme Court's ruling in *Janus* and planned for its outcome, including by using indemnity clauses. Even if that were true, none of it is legally relevant. As did the defendants in *Danielson*, Defendants here relied on presumptively valid state law and then-binding Supreme Court precedent. As the Ninth Circuit explained in *Danielson*:

> The Supreme Court has admonished the circuit courts not to presume the overruling of its precedents, irrespective of hints in its decisions that a shift may be on the horizon. . . . We decline to hold private parties to a different standard. It would be paradoxical for the circuit courts to be required to follow *Abood* until its overruling in *Janus*, while private parties incur liability for doing the same.
>
> The ability of the public to rely on the courts' pronouncements of law is integral to the functioning of our judicial system. After all, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). If private parties could no longer rely on the pronouncements of even the nation's highest

> court to steer clear of liability, it could have a destabilizing impact on the judicial system.
>
> Because the Union's action was sanctioned not only by state law, but also by directly on-point Supreme Court precedent, we hold that the good faith defense shields the Union from retrospective monetary liability as a matter of law.

*Danielson*, 945 F.3d at 1103-105 (citations omitted).

In addition, that Defendants planned for the contingency that a Supreme Court majority, depending on its membership, might someday disagree and overturn 40 years of precedent, thereby ending fair-share fee collections, is a reflection of responsible planning and Defendants' good faith commitment to the rule of law. After *Janus*, Defendants were able promptly to alert public employers of the change in law, request that all fair-share fees cease immediately, and ensure that they retained no further fair-share fees going forward. A legal rule that provided a disincentive to such sound contingency planning would delay compliance with the law.

Further, the indemnification clauses in Defendants' CBAs have been standard contract terms for decades because public employers relied on the exclusive representative correctly to follow the procedures for collecting fair-share fees set out in *Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986). *See, e.g., Cummings v. Connell*, 316 F.3d 886, 898 (9th Cir. 2003) (discussing a similar indemnification clause in a collective bargaining agreement in 1995). The indemnification clauses thus do not raise a genuine issue for trial about Defendants' good faith. They simply clarified the liability of the parties for any errors associated with the administration of the system of collecting fair-share fees. Finally, there is no requirement that a defendant act under close government supervision or at government instruction to maintain a defense of good faith to a claim brought under § 1983.

## C. Whether Defendants Have Shown the Absence of Conversion and Plaintiffs' Lack of Entitlement to Restitution as a Matter of Law

The "rules of the common law" have force in Oregon only "so far as the same . . . are not in conflict with the Constitution or special enactments of the Legislature." *Peery v. Fletcher*, 93 Or. 43, 53 (1919). "If the Legislature has expressed its will and that will disagrees with the common law, the latter must give way." *Nadstanek v. Trask*, 130 Or. 669, 680 (1929); *see also Oatman v. Bankers' & Merchants' Mut. Fire Relief Ass'n*, 66 Or. 388, 400 (1913) ("So far as th[e] statute is inconsistent with the common law, it supersedes it. * * * It is the duty of the courts to give effect to the statute[.]").

The Oregon Legislative Assembly foreclosed any common law conversion claim here by adopting PECBA, "a comprehensive statutory scheme authorizing and regulating collective bargaining between municipal and other public employers and employees." *Am. Fed'n of State Cty. & Mun. Emps. v. City of Lebanon*, 360 Or. 809, 815 (2017) (citation omitted); *see* ORS § 243.650 *et seq*. Part of that statutory scheme required that the unions represent all bargaining unit workers, including Plaintiffs here. *See* ORS 243.650(8) (2017); ORS § 243.666 (2017). Another part authorized public employers to collect fair-share fees and provide them to the unions to cover the costs associated with collective-bargaining representation. *See* ORS § 243.650(10) and (18) (2017); ORS § 243.666(1) (2017); ORS § 243.672(1)(c) (2017); and ORS § 292.055(5) (2017). Indeed, in their Complaint, Plaintiffs acknowledge that Oregon statutes authorized the collection of the fair-share fees they now seek to recover. Complaint ¶52 ("the laws of Oregon . . . authorized these automatic deductions and transfer[s] . . . to defendants"); *see also id*. ¶¶2, 50-51 (acknowledging that deduction of fair-share fees was "pursuant to" statute).

The adoption of statutes creating a labor-relations system that includes fair-share fees is incompatible with an interpretation of Oregon common law that imposes tort liability for conversion on private parties for having received those fees while those statutes were in force and while United States Supreme Court precedent allowed precisely that action. Holding Defendants liable for common law conversion under these facts would be not only "inconsistent with other applicable laws" but directly in conflict with the regime established by the Oregon Legislative Assembly. *See Espinoza v. Evergreen Helicopters, Inc.*, 359 Or. 63, 87 (2016); *cf. Bell v. Pub. Emps. Ret. Bd.*, 239 Or. App. 239, 251 (2010) ("Where, as here, the relationship is created and defined by statute, references to common-law relationships cannot supersede the statutory framework that the legislature actually established.").

In addition, under Oregon common law, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Scott v. Jackson Cty.*, 244 Or. App. 484, 499 (2011) (quoting RESTATEMENT (SECOND) OF TORTS § 222A (1965)); *see also Mustola v. Toddy*, 253 Or. 658, 664 (1969). To state a claim for conversion under Oregon law, Plaintiffs must allege that they were entitled to "immediate possession" of the "chattel" at issue. *Willamette Quarries, Inc. v. Wodtli*, 308 Or. 406, 413 (1989) (quoting *Artman v. Ray*, 263 Or. 529, 531 (1972)) (alterations omitted); *see also Berry v. Blair*, 209 Or. 15, 18 (1956); RESTATEMENT (SECOND) OF TORTS § 225 ("Either the person in possession of the chattel at the time of the conversion or the person then entitled to its immediate possession may recover the full value of the chattel at the time and place of the conversion."). Plaintiffs, however, had no right to immediate possession of the fair-share fees they now seek to recover at the time of the deductions, and Plaintiff thus cannot state a claim for conversion.

Finally, under Oregon law, the fair-share fees were not a "chattel" subject to conversion. Money can qualify as a chattel for purposes of a conversion claim only "when the money was wrongfully received by the party charged with conversion, or an agent is obligated to return specific money to the party claiming it." *Waggoner v. Haralampus*, 277 Or. 601, 604 (1977) (citation omitted); *see also Marquard v. New Penn Fin., LLC*, 2017 WL 4227685, at *6 (D. Or. Sept. 22, 2017); *Duty v. First State Bank of Or.*, 71 Or. App. 611, 618 (1985). When the fair-share fees were deducted from Plaintiffs' wages, doing so was entirely consistent with Oregon law and pre-*Janus* Supreme Court precedent. Thus, at that time, the money was not wrongfully received nor received by an agent with an obligation to return it. There was, therefore, no conversion.

Finally, to the extent that Plaintiffs are seeking an equitable remedy of restitution under their conversion claim, that avenue similarly is unavailing. As the Ninth Circuit explained in *Danielson*:

> Even accepting Plaintiffs' restitutionary premise, the equities do not weigh in favor of requiring a refund of all agency fees collected pre-*Janus*. The Union bears no fault for acting in reliance on state law and Supreme Court precedent. It collected and spent fees under the assumption—sanctioned by the nation's highest court—that its conduct was constitutional. And the Union provided a service to contributing employees in exchange for the agency fees it received. Indeed, under *Abood*, the Union was required to use those fees for collective bargaining activities that inured to the benefit of all employees it represented—an exchange that cannot be unwound. It is true that, under current law, the employees suffered a constitutional wrong for which they may have no viable means of compensation if the good faith defense prevails. Nonetheless, it would not be equitable to order the transfer of funds from one innocent actor to another, particularly where the latter received a benefit from the exchange. . . . Under the circumstances here, the most equitable outcome is a prospective change in the Union's policy and practice (which undisputedly occurred), without retrospective monetary liability.

*Danielson*, 945 F.3d at 1103 (citations omitted). Equity dictates the same result here.

**D. Whether Plaintiffs' Request for Declaratory Judgment Is Moot**

In their Complaint, Plaintiffs request two separate types of declaratory relief. First, Plaintiff ask for a declaration

> that all pertinent statutes, forced fee provisions of collective-bargaining agreements that compelled plaintiffs and class members to pay nonmember fees to the respective defendants and affiliates as a condition of their employment, the deductions of forced nonunion fees, and the receipt and use of those forced deductions by defendants are unconstitutional under the First Amendment, as secured against state infringement by the Fourteenth Amendment to the United States, and are null and void[.]

Complaint, Prayer, ¶ B. Plaintiffs also ask for a declaration

> that defendants committed the tort of conversion in entering into and enforcing forced fee provisions and receiving and using the respective plaintiffs' and class members' forced fee deductions[.]

Complaint, Prayer, ¶ C. Because the Court finds that Defendants did not commit the tort of conversion as a matter of law, there is no basis for Plaintiffs' second request.

As to Plaintiffs' first request, Oregon law no longer allows what Plaintiffs call "forced fee deductions," what Defendants call "fair-share fees," and what Oregon calls "payments-in-lieu-of-dues."[7] Further, Defendants modified their behavior to conform to the ruling in *Janus* immediately after the Supreme Court announced that decision.

The Ninth Circuit has "routinely deemed cases moot where 'a new law is enacted during the pendency of an appeal and resolves the parties' dispute.'" *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166 (9th Cir. 2011) (quoting *Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1181 (9th Cir. 2006)). This rule applies with equal force to intervening changes in the

---

[7] In 2019, the Oregon Legislative Assembly amended ORS § 243.666 and repealed both ORS § 243.776 and ORS § 292.055, effective January 1, 2020. *See* Chapter 429 Oregon Laws 2019 (HB 2016) §§ 9 and 19.

applicable case law. *See, e.g., Aikens v. California*, 406 U.S. 813, 814 (1972); *Smith v. Univ. of Wash.*, 233 F.3d 1188, 1195 (9th Cir. 2000). For example, in *Aikens*, the Supreme Court dismissed as moot a California prisoner's pending federal constitutional challenge to California's death penalty statute "based on the intervening decision of the California Supreme Court in *People v. Anderson*, 6 Cal. 3d 628 (1972)," which had "declared capital punishment in California unconstitutional under … the state constitution." 406 U.S. at 814. The petitioner in that case "no longer face[d] a realistic threat of execution, and the issue on which certiorari was granted—the constitutionality of the death penalty under the Federal Constitution—[was] now moot in his case." *Id*. Soon after the Supreme Court decided *Janus*, the Oregon legislature changed Oregon law and Defendants ceased their challenged actions. Plaintiffs' request for a declaratory judgment addressing Defendants' past conduct that is no longer occurring or even permitted under state law is moot.

## CONCLUSION

Defendants' motion for summary judgment (ECF 32) is GRANTED. This case is dismissed.

**IT IS SO ORDERED**.

DATED this 31st day of March, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge